**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ZARANABEN S. PATEL,** *Individually and as Administratrix of the Estate of Shaileshkumar H. Patel, deceased,* : : : : **Plaintiff** : v : **KENSOL-FRANKLIN, INC., et al.,** : **Defendants** | **CIVIL ACTION NO. 3:14-1439** (JUDGE MANNION) |

**MEMORANDUM**

Presently before the court is plaintiff's request for discovery of non-party Letica Corporation's ("Letica") internal investigation documents. Specifically, plaintiff seeks the complete investigation file, including witness statements, photographs and a report detailing Letica's post-accident investigation prepared by Dan Hunter, a non-attorney employee of Letica.[1] Plaintiff states that she first learned that Letica had an investigation file on October 14, 2015, when the parties were to depose Letica's Rule 30(b)(6) corporate designee. Plaintiff then sought the file and Letica opposed the request claiming it was protected based on attorney-client privilege and work-product doctrine. A discovery dispute teleconference was held on January 11, 2016. The court issued an order directing Letica to supply the court with unredacted copies of

---

[1] Plaintiff originally thought Letica's investigation report was prepared by Scott Daulton. However, Letica clarified that Hunter prepared the report. (Doc. 64). Hunter is the Director of Environment, Health & Safety for Letica.

all correspondence and matters from its internal investigation that it refused to disclose pursuant to its Privilege Log attached to its December 22, 2015 correspondence with the court. (Doc. 59). Letica was also directed to provide a detailed explanation of each item in the investigation file, including subject matter, the date and time it took place, the parties present, and the specific legal objection raised. Further, counsel for the parties, as well as counsel for Letica, were directed to file briefs setting forth their arguments on the applicability or non-applicability of privilege to the requested file. (Doc. 61).

Plaintiff filed her letter brief on January 22, 2016, with exhibits. (Doc. 62). Also, on January 22, 2016, Letica filed its brief with its detailed Privilege Log attached. (Doc. 63). On January 26, 2016, Letica submitted to the court its documents for *in camera* review which the court filed under seal on March 4, 2016. (Doc. 69). On February 4, 2016, Letica filed a one-page letter reply to plaintiff's brief. (Doc. 64). Defendant Kensol-Franklin, Inc., did not file a brief as to whether Letica's investigation file was protected from discovery. The request of plaintiff for Letica's investigation file will be **GRANTED IN PART**.

**I.    BACKGROUND**

By way of relevant factual background, plaintiff Zaranaben S. Patel, a resident of Duryea, Pennsylvania, individually and as Administratrix for the estate of Shaileshkumar H. Patel ("decedent") filed this action on July 3, 2014.

The case was removed to this court on July 25, 2014, based on diversity jurisdiction, 28 U.S.C. §1332.[2] (Doc. 1). On September 3, 2014, plaintiff filed an amended complaint. (Doc. 8). She alleges that defendants, Kensol-Franklin, Inc., and The Thomson Group Companies, sold decedent's employer, Letica, a defectively designed and unreasonably dangerous product, namely a portable KF 2500A Hot Stamping Machine designed to install foil "Child Hazard Warning" labels on containers, that lacked adequate and necessary warnings to protect the end user. As a result, plaintiff alleges that this machine toppled over, crushing and killing decedent, age 38, on September 10, 2012. The amended pleading states that decedent is survived by his wife, plaintiff Zaranaben S. Patel, and his two young children, daughter, Krishna Patel and son, Om Patel. (Doc. 8, ¶ 3). It also states that plaintiff brings this suit as the Administratrix of the Estate of decedent having been duly appointed by the Register of Wills Office of Luzerne County. (Id., ¶ 4). Plaintiff alleges that defendants are liable under theories of negligence (Count I), strict product liability (Count II), and breach of implied warranty (Count III). In Count IV, plaintiff brings a wrongful death claim against defendants "on behalf of decedent's next of kin/statutory beneficiaries." Plaintiff states that she survived decedent along with his daughter and his son. (Id., ¶'s 52-53).

---

[2]Since this case is proceeding on diversity jurisdiction, the court applies Pennsylvania substantive law to plaintiff's claims. Erie v. Tompkins, 304 U.S. 64, 78 (1938).

Additionally, it is alleged that plaintiff brings the wrongful death claim "on behalf of all persons entitled to recover under law, claims all medical, funeral, burial, and estate administration expenses, the loss of services, society, comfort, guidance and tutelage due to the death of [decedent], all pecuniary loss suffered by decedent's next of kin/statutory beneficiaries by reason of the death of [decedent], and all other damages recoverable under applicable law." (Id., ¶ 55). Lastly, in Count V, plaintiff brings a survival claim.

## II.   DISCUSSION

Plaintiff argues that Letica must be required to provide its complete investigation file, including witness statements and investigation report concerning decedent's fatal accident. Letica is not a party to this action because it is immune from suit under the Pennsylvania Workers' Compensation Act, 77 P.S. §481(b). Plaintiff requested the documents in the investigation report *via* subpoena and Letica did not produce them.[3] Plaintiff

---

[3] The Court in Highland Tank & Mfg. Co. v. PS Intern., Inc., 277 F.R.D. 374, 379 (W.D. Pa. 2005), stated:

> Generally, Federal Rule of Civil Procedure 45 authorizes the issuance of a subpoena commanding a person to whom it is directed to attend and give testimony, or to produce and permit the inspection of designated documents. [footnote omitted]. Rule 45(a)(1)(C). Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit. *See* Adv. Comm. Note on 1991 Amendments to Fed.R.Civ.P. 45.

contends that the investigation file is not protected by any privilege since it was compiled in the ordinary course of business and produced by Letica's non-attorney employee as part of an internal investigation regarding the accident at issue. In response, Letica states that the investigation report was prepared by Hunter under the direction of its in-house attorney Travis Michael and, that the investigation was not in the ordinary course of business. Letica states that after the fatality, the investigation was immediately assigned to an in-house attorney who controlled the investigation through Hunter. Letica claims it is irrelevant that Hunter is not an attorney, or that the witnesses interviewed in the report are not lawyers since the attorney client privilege is not limited to communications made only by lawyers. Letica states that the privilege also protects communications made between a lawyer and his agent. As such, Letica has not produced any of the investigative report claiming it is entirely a communication between the investigator and Letica's lawyer.

No doubt, courts, including this one, have held in bad faith insurance claims that communications between in-house counsel and claims adjustor and, related notes in claims file are generally privileged. Quaciari v. Allstate Ins. Co., 1997 WL 570921, *1 (E.D.Pa. Sept. 3, 1997); Berry v. Ohio Casualty Ins. Co., Civil No. 14-1262, M.D.Pa. July 2, 2015 Memo. Also, in Serrano v. Chesapeake Appalachia, LLC, 298 F.R.D. 271 (W.D.Pa. 2014), the court held that the investigation report and the communications with employees utilized in formulating it by the in-house attorney for the non-party company which

5

employed decedent who was fatally injured in a workplace accident were protected by the attorney-client privilege and the work-product doctrine. The *Serrano* Court recognized that the company could not invoke the work-product privilege under Rule 26(b)(3) "because by its terms the protection does not apply to third parties." Id. at 277. The *Serrano* Court stated that "a growing number of courts have recognized that the [work-product] protection afforded by Hickman [v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)] extends beyond that of the Rule." Id. at 278. This court agrees with Serrano, 298 F.R.D. at 278-80, and the cases it cites which held "that the non-parties could invoke the [work-product] privilege where the circumstances implicated 'all the purposes for the privilege articulated in *Hickman*: 'preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries' preparation, and preventing disruption of ongoing litigation.'" (citation omitted). Indeed, "[t]he doctrine 'extends to material prepared in anticipation of litigation by an attorney's 'investigators and other agents.'" Id. (citations omitted). Nor does it matter that the material was prepared in anticipation of different litigation "because such material 'will still be protected as work product if the anticipated litigation was related to the proceedings in which the material is to be produced.'" Id. at 279 (citations omitted).

These cases certainly support Letica's contention that the attorney-client privilege and the work-product doctrine protect communications made

6

between its in-house attorney Michael and Hunter as well as the communications between Michael and the other employees of Letica. After the accident, attorney Michael conducted interviews of eyewitness employees of Letica and others who had knowledge of or facts relating to the event. Interviews were also performed by supervisory employees of Letica at attorney Michael's direction. Hunter then prepared the investigation report at the direction of attorney Michael.

The law is clear that "documents prepared in the regular course of business rather than for purpose of the litigation are not eligible for work-product protection, even if the prospect of litigation exists." Sullivan v. Warminster Tp., 274 F.R.D. 147, 152 (E.D.Pa. 2011) (citation omitted); Highland Tank & Mfg. Co. v. PS Intern, Inc., 246 F.R.D. 239, 246 (W.D.Pa. 2007) ("the work-product doctrine 'only protects documents prepared in anticipation of litigation, not in the regular course of business.'") (citation omitted).

Since the jurisdiction of this court is based on diversity, it must look to Pennsylvania state law for the legal principles regarding the attorney-client privilege. *See* United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988) ("In this diversity case Fed.R.Evid. 501 refers the district court, on questions of privilege, to state law."). "In Pennsylvania, the attorney-client privilege is an absolute privilege; it is not a limited privilege that is inapplicable whenever a court determines that the case cannot be fairly decided if the

7

privilege is invoked." Mine Safety Appliances Co. v. North River Ins. Co., 73 F.Supp.3d 544, 571 ( W.D.Pa. 2014) (citation omitted).

The *Sullivan* Court, 274 F.R.D. at 150, addressed the attorney-client privilege and the work-product doctrine as defined by the Third Circuit and stated:

> The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> Rhone–Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994) (citations omitted). The party claiming that evidence is subject to the attorney-client privilege bears the burden of establishing the privilege. United States v. Voigt, 89 F.3d 1050, 1067 n. 6 (3d Cir. 1996). Furthermore, "under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427 (3d Cir. 1991).
>
> The work-product privilege is codified by Federal Rule of Civil Procedure 26(b)(3), which states that: a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

8

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (I) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3). As with the attorney-client privilege, the party claiming that evidence is protected attorney work product has the burden of establishing that work-product protection applies. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000). Unlike the attorney-client privilege, disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information. See Westinghouse Elec. Corp., 951 F.2d at 1428 ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.").

*See also* Mine Safety Appliances Co. v. North River Ins. Co., 73 F.Supp.3d at 569-70.

The *Sullivan* Court, 274 F.R.D. at 151 , also stated:

[I]t is the communications and not the underlying facts that are privileged. *See, e.g.,* Rhone–Poulenc Rorer, 32 F.3d at 862. Plaintiffs are entitled to discovery regarding the underlying facts of the investigation. It should be further noted, however, that: The protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories. Sampson v. School Dist. of Lancaster, 262 F.R.D. 469, 474 (E.D.Pa. 2008). Such communications are generally protected by the work-product privilege instead. See id.

Additionally, "[t]he question whether a document was prepared in anticipation of litigation is often a difficult factual matter." United States v.

9

Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). A document is prepared in anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. (citations omitted). As such, courts should determine "the state of mind of the party preparing the document or ... the party ordering preparation of the document." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993). "This inquiry is limited by the requirement that the party's anticipation of litigation be objectively reasonable." Sullivan, 274 F.R.D. at 152 (citing Martin v. Bally's Park Place Hotel & Casino, 983 F.2d at 1260).

Based upon the above stated principles, the documents contained in Letica's investigation file will now be discussed. Since Letica is seeking protection from disclosure of its investigation file based on the attorney-client privilege and the work-product doctrine, it has the burden of proving these privileges apply. *See* Mine Safety Appliances Co., 73 F.Supp.3d at 571 (citations omitted). The court has reviewed the documents submitted *in camera*, (Doc. 69), in conjunction with Letica's Privilege Log, (Doc. 63). The following are the court's findings.

Exhibit 1, pages 1-3 are Hunter's September 21, 2012 report addressed to attorney Michael and this report is protected from disclosure by the attorney-client privilege and the work-product doctrine. The court finds that

this report was not complied in the ordinary course of business since it was intended to assist attorney Michael with an OSHA investigation as well as to implement post-accident modifications. It makes no difference that Hunter prepared the report since the work-product doctrine also protects "materials prepared by an attorney's agent." Mine Safety Appliances Co., 73 F.Supp.3d at 569 (citation omitted); *Serrano*, *supra* (the work-product doctrine protects materials prepared by an attorney's agent). The report and the referenced communications involving the accident investigation performed at the direction of attorney Michael also are protected by the attorney-client privilege.

Exhibit 1, pages 4-29 are photographs taken by Hunter of the accident site as well as the machine after the accident. The court finds that none of the photographs are protected by the attorney-client privilege or the work-product doctrine. They do not contain any notes or comments. Nor do they depict any mental processes of attorney Michael. Simply because the photographs are part of the investigation report does not entitle them to protection under either the attorney-client privilege or the work-product doctrine. As such, Letica is directed to produce all of the photographs to the parties.

Exhibit 2, pages 1-4 are September 27, 2012 e-mails from James Griffin, Letica's Manager of Automation & Technical Services, to Hunter, Timothy Nelson and attorney Michael. These e-mails are protected from

disclosure by the attorney-client privilege and the work-product doctrine.[4]

Exhibit 2, pages 5-9 are September 28, 2012 e-mails from Griffin and Hunter to Nelson and attorney Michael. These e-mails are protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 2, pages 10-25 are October 2012 e-mails from Griffin to Hunter, Nelson and attorney Michael. These e-mails are protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 2, page 26 is an October 15, 2012 e-mail from Hunter sent to Russell White Compliance Officer with the U.S. Department of Labor, Nelson, attorney Michael, Joe Santucci, and Mara Letica regarding OSHA's post-accident investigation. This e-mail is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 2, page 27 is an October 19, 2012 e-mail from Hunter sent to Santucci, Nelson, attorney Michael, and Mara Letica regarding White's OSHA investigation. This e-mail is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 2, pages 28-43 is a March 8, 2012 e-mail from Spyridoula Iliadis, Letica Human Resources ("HR") Manager, with attachment sent to Hunter, Nelson, and attorney Michael regarding White's OSHA investigation after the

---

[4]The court notes that the Exhibit 2 e-mails contain the string of e-mails from the prior communications. Since these e-mails are discussed individually, the e-mail string is not re-addressed with each Exhibit.

accident. This e-mail is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 3, page 1 is a September 13, 2012 statement from Letica employee Dipakkumar Patel, a Letica Packer Handler and relative of decedent, taken at the direction of attorney Michael, initialed by Anne Ventimiglio, Letica's Vice President of HR. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.[5]

Exhibit 3, page 2 is a September 13, 2012 statement from Letica employee (printer) Ed Walter Howell initialed by Ventimiglio taken at the direction of attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 4, page 1 is a September 12, 2012 Internal Memorandum regarding a telephone statement from Howell to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the

---

[5]"Work-product protection is not absolute, and Plaintiffs can obtain otherwise protected materials if they show that they have 'substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" Sullivan, 274 F.R.D. at 152 . The court notes that Letica's employees could be deposed by plaintiff as fact witnesses regarding their knowledge of the accident. In fact, Letica concedes this point and states that many of its employees had been deposed. (Doc. 64). Thus, plaintiff is able to obtain the substantial equivalent of the statements of Letica's employees contained in the investigation report by other means. Also, plaintiff's exhibits attached to her instant letter brief, (Doc. 62), include excerpts from deposition transcripts from Letica's employees.

13

work-product doctrine.

Exhibit 4, page 2 is a September 10, 2012 telephone statement from Larry Keeffe, Letica's Assistant Plant Manager, to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 4, page 3 is the September 10, 2012 second telephone statement from Keeffe to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 4, page 4 is a September 11, 2012 telephone statement from Mel Russell, Letica's Quality Control Analyst, to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Exhibit 4, page 5 is a September 10, 2012 telephone statement from Steve Satsowski, a Letica Maintenance Department employee, to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

The final *in camera* document is Exhibit 4, page 6 which is a September 10, 2012 telephone statement from Dipakkumar Patel to attorney Michael. This statement is protected from disclosure by the attorney-client privilege and the work-product doctrine.

**III.    CONCLUSION**

The court finds that only the photographs contained in the investigation report should be produced by Letica to the parties. All of the other documents were part of the post-accident investigation which was not in the ordinary course of business, and they were prepared under direction of attorney Michael for possible subsequent litigation closely related to this case, including the OSHA investigation. Attorney Michael had direct involvement with and controlled the fatal accident investigation from its inception. Also, Letica reasonably anticipated litigation immediately after the accident and communications in the investigation report following the accident fell within the work-product doctrine. The court's *in camera* review further shows that the Exhibits discussed above to which Letica asserts the attorney-client privilege do in fact contain "information exchanged in order to facilitate the professional relationship between an attorney and his client with regard to ongoing or potential legal proceedings." Highland Tank & Mfg. Co. v. PS Intern, Inc., 246 F.R.D. at 245. As such, these documents are protected from disclosure by the attorney-client privilege and the work-product doctrine.

Accordingly, the court will **GRANT IN PART** plaintiff's request and will direct Letica to produce all the photographs from its investigation report. Plaintiff's request for all of the other documents in the report will be **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 22, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1439-02.wpd